**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| Joseph F. Sherby,<br><br>Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>Defendant. | ) | C.A. No.: 2:09-1061-PMD<br><br>**ORDER** |

Claimant, Joseph F. Sherby ("Claimant") brought this action, pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), to obtain judicial review of a final decision of the Social Security Commissioner denying in part Claimant's claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423, 1381. The record contains a Report and Recommendation ("R&R") of a United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B), recommending the court to reverse the Commissioner's decision and to remand the case back to the administrative law judge.

## BACKGROUND

Claimant applied for DIB on January 19, 2006, alleging that he became unable to work on September 23, 2003, due to a work-related back injury, which ultimately required spinal fusion surgery. Claimant, 50 years old when he allegedly became disabled, has a twelfth-grade education and past relevant work experience operating heavy equipment. The Social Security Administration denied Claimant's claim for disability on April 25, 2006, and upon reconsideration on July 25, 2006. (R. 64, 73.) Claimant then received a hearing before an administrative law judge ("ALJ"), and on June 26, 2008, the ALJ found that Claimant was disabled from the severe impairment of degenerative disc disease of the lumbar spine between September 23, 2003 and July 5, 2006. The

ALJ also found, however, that Claimant was no longer disabled as of July 6, 2006, because, by that date, Claimant's medical condition had improved so that he could perform a full range of light work. (R. 26–29.) On April 3, 2009, the Appeals Council denied Claimant's request for review, making the ALJ's decision the final decision of the Commissioner.

Claimant then filed suit in this court seeking a review of the Commissioner's decision. In his R&R, the Magistrate Judge ultimately determined that the Commissioner's final decision needed to be reversed and remanded because the ALJ erred by relying solely on the medical-vocational guidelines to complete his step five sequential evaluation. Because the ALJ found that Claimant suffered from a nonexertional limitation, in that his pain would cause concentration deficits, the Magistrate Judge found that the ALJ should have obtained testimony from a vocational expert as to whether or not Claimant could perform a significant number of jobs in the national economy rather than rely solely on the grids to make that determination. (R&R at 12–14.) The Commissioner objects to the R&R, contending that there was substantial evidence to support the ALJ's reliance on the grids. Claimant has also filed objections to the R&R, contending that substantial evidence does not support the ALJ's finding that medical improvement occurred on July 6, 2006. Alternatively, Claimant asks the court to remand the matter to the ALJ because in January of this year the Social Security Administration found Claimant disabled again as of June 27, 2008, pursuant to a second application for disability. Because the Commissioner found Claimant disabled one day after the ALJ issued his decision in this matter, Claimant asks the court to remand this case so the ALJ can review any new evidence and reassess his decision that Claimant became medically improved as of July 6, 2006.

## STANDARD OF REVIEW

### A. Magistrate Judge's Report and Recommendation

The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within fourteen days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in part. *Id.* Additionally, the court may recommit the matter to the Magistrate Judge with instructions. *Id.* A party's failure to object is accepted as an agreement with the conclusions of the Magistrate Judge. *See Thomas v. Arn*, 474 U.S. 140 (1985).

### B. Judicial Review Under Social Security Act

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Although this court may review parts of the Magistrate Judge's R&R *de novo*, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> 'evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (alteration in original)).

## ANALYSIS

As noted above, the Magistrate Judge determined that the ALJ erred by applying the medical-vocational guidelines (the "grids") to determine Claimant's disability status because the ALJ found that Claimant suffered from both exertional and nonexertional impairments. At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). To improve both the uniformity and efficiency of this determination, the Commissioner promulgated the grids, located at 20 C.F.R. Part 404, subpart P, appendix 2. *Heckler v. Campbell*, 461 U.S. 458, 461 (1983). The grids consist of three "Tables," each representing a different residual functional capacity, including sedentary (Table 1), light (Table 2), and medium work (Table 3). *Id.* Each table consists of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. *Id.* Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. *Id.* If such work exists, the claimant is not considered disabled.

Each grid, however,

> considers only the strength or exertional component of a claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of his disability. Thus, in cases where pain occurs only upon exertion and limits one's strength functioning, the grid tables will apply. But when a claimant suffers from both exertional and nonexertional limitations, the grid tables are not conclusive but may only serve as guidelines.

*Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989) (citing *Wilson v. Heckler*, 743 F.2d 218 (4th Cir. 1984)); *see also* 20 C.F.R. § 404.1569a(d). While "not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids, the proper inquiry . . . is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." *Walker*, 889 F.2d at 49. When the Commissioner is unable to rely on the grids, he must prove through additional evidence, such as testimony of a vocational expert, that jobs exist in the national economy which the claimant can perform. *See id.* at 49–50.

In this case, the ALJ found that despite Claimant's exertional limitations he had the residual functional capacity to perform the full range of light work, but "[g]iven that the claimant's pain would cause concentration deficits," the ALJ further limited Claimant to unskilled work. (Tr. 28.) Because the ALJ determined that Claimant suffered from this nonexertional limitation, in addition to his exertional impairments, Claimant believes the Commissioner must have proved through vocational expertise that jobs exist in the national economy which Claimant can perform rather than rely solely on the grids. The Magistrate Judge agreed and ultimately determined that the Commissioner's final decision needed to be reversed and remanded so the ALJ could obtain the testimony of a vocational expert to complete his step five sequential evaluation. (R&R at 12–14.) The Commissioner objects to the Magistrate Judge's decision and asks the court to find that the ALJ

did not err by relying on the grids to determine whether or not Claimant could perform a significant number of jobs in the national economy. He argues that substantial evidence supports the ALJ's finding that, although Plaintiff does experience pain that limits his concentration, he retained the ability to perform the full range of unskilled, light work. According to the Commissioner, because the ALJ properly accounted for Claimant's nonexertional limitation by limiting him to unskilled work and because the grids, by definition, only encompass unskilled work, the ALJ did not err by relying on the grids to direct a finding of not disabled as of July 6, 2006. To support his position, the Commissioner cites to *Smalls v. Comm'r of Soc. Sec.*, No. 08-cv-211, 2009 U.S. Dist. LEXIS 19830 (D.S.C. Mar. 12, 2009) (affirming a report and recommendation after no objections were filed).

In *Smalls*, the ALJ determined that the claimant's medically determinable mental impairments, including depression and deficits in intellectual functioning, did not result in significant limitations on his residual functional capacity to perform medium work. When seeking a review of the ALJ's decision, the claimant argued that the ALJ erred by relying solely on the grids to direct a finding that he was not disabled because the record established that he suffered from the nonexertional limitation of depression. The magistrate judge determined that the claimant "inaccurately characterize[d] the ALJ's conclusion," because in her view, the ALJ did not solely rely on the grids, but used it merely as a framework to reach his decision. In the case, the ALJ gave controlling weight to the opinion of a state agency psychological consultant, who examined the claimant and determined that the claimant's depression only mildly limited his concentration, persistence, and pace. In finding that the claimant's depression mildly affected his functional capacities, the ALJ limited claimant to unskilled work and applied the grids to find the claimant not

disabled. Based on this record, the Magistrate Judge concluded that ALJ did not solely rely on the grids to determine the claimant's disability status, presumably because the ALJ properly gave credit to the psychological consultant's opinion that the claimant's capacity to perform medium work was only mildly affected by his depression and because the ALJ limited the claimant to unskilled work. Because, in this case, the ALJ also limited Claimant to unskilled work to account for his nonexertional limitation, the Commissioner asks the court to follow the decision in *Smalls* to find that the Commissioner did not need to obtain the testimony of a vocational expert to meet his burden in the fifth step of the sequential evaluation.

After careful review and consideration of the arguments and the record, the court is constrained to agree with the Magistrate Judge and finds that the Commissioner's decision should be reversed and remanded so that the ALJ may obtain the testimony of a vocational expert in determining whether or not Claimant can perform a significant number of jobs which exist in the national economy despite the concentration deficiencies he experiences from pain. As already discussed, when a nonexertional limitation[1] rises to the level that it affects a claimant's residual functional capacity to perform work even though he has the exertional capability to perform those jobs, reliance on the grids to determine whether that claimant is disabled is precluded. Rather, in those circumstances, the Commissioner has the burden to prove by expert vocational testimony, and not the grids, that despite the claimant's combination of exertional and nonexertional impairments

[1]"Exertional limitations" exist "[w]hen the limitations and restrictions imposed by [the claimant's] impairment(s) and related symptoms, such as pain, affect only [his] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. §§ 404.1569a(b), 416.969a(b). A nonexertional limitation "is a limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not, such as mental retardation, mental illness, blindness, deafness or alcoholism" and is "present at all times in a claimant's life, whether during exertion or rest." *Gory v. Schweiker*, 712 F.2d 929, 930 (4th Cir. 1983); *see also* 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

specific jobs exist in the national economy that the claimant can perform. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983); *see also Walker*, 889 F.2d at 49. To aid in situations like this, the Social Security Administration issued Social Security Ruling 83-14, which "clarifies the distinction between exertional and nonexertional limitations and explains how the latter affect performance of work activities." This program policy statement notes that "[a]fter it has been decided that an impaired person can meet the primary strength requirements of sedentary, light, or medium work—sitting, standing, walking, lifting, carrying, pushing, and pulling—a further decision may be required as to how much of this potential occupational base remains, considering certain nonexertional limitations which the person may also have." SSR 83-14.

The statement acknowledges that certain additional nonexertional limitations may have very little effect on the range of work remaining that an individual can perform and provides several examples of such nonexertional impairments. For example, the statement notes that an allergy to ragweed pollen is a nonexertional impairment which ordinarily has an insignificant effect on the unskilled, sedentary occupational base that a person is exertionally capable of performing. To explain this fact, the statement notes that a person with this nonexertional impairment experiences no more discomfort than someone with a common cold. And for persons who are more affected by this condition, the statement suggests restricting the claimant from working in places outdoors, since ragweed grows outdoors and its pollen is carried in the air. Because the majority of unskilled, sedentary jobs are performed indoors, the statement explains that this nonexertional impairment would not significantly compromise the number of remaining jobs the claimant could perform in the unskilled, sedentary occupational base. *See also* SSR 83-14 ("The need to avoid environments which contain objects or substances commonly known not to exist in most workplaces would be an obvious

example of a restriction which does not significantly affect the medium occupational base.”). The statement also lists a person’s allergy to feathers or his or her inability to ascend or descend scaffolding, poles, and ropes as examples of a nonexertional limitations that have very little or no effect on the unskilled, light occupational base. Presumably, the statement reaches this conclusion because relatively few jobs in the national economy require these skills. *See* SSR 83-14 (“Relatively few jobs in the national economy require ascending or descending ladders and scaffolding. . . . In jobs at the medium level of exertion, there is more likelihood than in light work that such factors as the ability to ascend or descend ladders and scaffolding, kneel, and crawl will be part of the work requirement. However, limitations of these activities would not significantly affect the occupational base.”).

On the other hand, the statement acknowledges that other nonexertional limitations may substantially reduce a range of work that a claimant can perform under the rules. For example, the statement explains that where a person has a visual impairment that causes the person to be a hazard to himself and others, as evidenced through certain manifestations of the impairment, such as tripping over boxes while walking, the remaining occupational base for light work will be significantly diminished. And for those cases in between the examples just described, the statement states that “a decisionmaker will often require the assistance of a [vocational specialist]” to determine whether or not the additional nonexertional limitation precludes the claimant from performing a significant number of jobs in the occupational base. Thus, in conclusion, ruling 83-14 lists the three possible situations that should be considered in reaching judgments as to the sufficiency of the remaining exertional job base for a claimant found to be suffering from both exertional and nonexertional impairments:

1. Where it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in Tables No. 1, 2, or 3 would not be affected.

2. Where it is clear that additional limitations or restrictions have significantly eroded the exertional job base set by the exertional limitations alone, the remaining portion of the job base will guide the decision.

3. Where the adjudicator does not have a clear understanding of the effects of additional limitations on the job base, the services of a [vocational specialist] will be necessary.

In this case, the court believes Claimant's nonexertional impairment, a concentration deficiency caused by pain, falls in between the examples cited in SSR 83-14, thus requiring the assistance of a vocational expert. While the court does not believe it is clear from the record that Claimant's concentration deficiency significantly erodes the exertional job base at the light work level, as a visual impairment would, the court does believe that an impairment in concentration could erode the number of unskilled, light jobs more than an impairment created by an allergy. Moreover, because some degree of concentration is required for every job, including unskilled jobs, the court does not believe it is clear that Claimant's nonexertional limitation has very little effect on the entire occupational base for unskilled, light work, and thereby not affecting the conclusion directed by the grids, as is the case for a nonexertional limitation restricting a person from climbing ladders, ropes, or poles. Therefore, the court finds that this case falls more into SSR 83-14's third possible situation, as cited above, rather than the first two. To be sure, this is a difficult determination, and part of the difficulty arises from the fact that concentration is a necessary element of any job. Another part of the difficulty arises from the fact that the ALJ was unclear as to how severe he found Claimant's concentration limitation to be. The ALJ only generally stated that he found Claimant's pain would

cause concentration deficits,[2] and although he did not state to what degree, he found it severe enough to prevent Claimant from performing skilled, light work, which is work he thought Claimant was capable of performing after considering only his exertional limitations.

Although the Commissioner argues that the ALJ's reliance on the grids was adequate, because the ALJ accounted for Claimant's nonexertional limitation by limiting him to unskilled work and the grids only encompass unskilled work, the court does not believe the ALJ's general restriction prohibiting Claimant from performing skilled work adequately proves the Commissioner met its burden of establishing that Claimant's concentration deficiency had little or no effect on the occupational base of unskilled, light work. Had the ALJ cited testimony of the Claimant regarding his ability to concentrate, or reports or opinions of doctors regarding the effect Claimant's pain had on his concentration, then he arguably would have only used the grids as a "framework" in deciding Claimant's case. The same might be true if the ALJ referenced a vocational resource in determining that Claimant's concentration deficiency, however severe, had very little effect on the unskilled occupational base, or even referred to certain occupational code numbers assigned to jobs, which reflect the different levels of complexity in dealing with data, people, and objects, to prove the occupational base for unskilled, light work was not significantly diminished by Claimant's nonexertional limitation. But by simply restricting Claimant to unskilled work, when the grids only

[2]While the ALJ did find that Claimant's pain was not debilitating, as Claimant alleged, and while he also gave little weight to Dr. Weissglass's report, because he found it inconsistent with the reports of other treating physician's in the record, it appears to the court that only Dr. Weissglass reported on the effect Claimant's pain had on his ability to concentrate and to attend to work tasks. In his report, Dr. Weissglass indicated that the pain experienced by Claimant, along with other limitations, would significantly limit Claimant's concentration by 50% or more during a workday or workweek. (Tr. 258.) Thus, it appears that the ALJ did give some weight to Dr. Weissglass's report in this respect, but to what extent he agreed with Dr. Weissglass's opinion that Claimant's concentration deficits from pain was a significant limitation is unsure, as the ALJ only generally stated that he found Claimant's pain would cause concentration deficits.

encompass unskilled work, and without citing any evidence in the record to explain how severe he found Claimant's nonexertional impairment to be or as to why the impairment does not necessarily erode a number of unskilled jobs, the ALJ solely relied on the grids to direct a finding that Claimant was no longer disabled as of July 6, 2006.[3]

In reaching its determination, the court also finds the reasoning in *Bonds v. Astrue*, No. 07-1135, 2008 U.S. Dist. LEXIS 61932 (D.S.C. July 29, 2008) (adopting the report and recommendation after no objections were filed) persuasive, as did the Magistrate Judge in this case. In *Bonds*, like in this case, the ALJ found that the claimant was limited to unskilled work due to mild to moderate concentration deficits from pain, and ultimately concluded that the grids directed a finding of not disabled. On review in the district court, the claimant contended that the ALJ erred by relying on the grids to deny his claim. The claimant argued that, because he suffered from a significant nonexertional impairment, the ALJ should have obtained expert vocational testimony to prove that a significant number of jobs existed in the national economy which he could perform. In response, the Commissioner argued that, because the claimant's nonexertional limitation of being limited to unskilled work is incorporated into the grids, the ALJ was correct to rely on them in

[3]In *Smalls v. Comm'r of Soc. Sec.*, which is cited to by the Commissioner, the magistrate judge found that the ALJ did not solely rely on the grids to reach a determination that the claimant was not disabled because the ALJ properly determined that the claimant's depression only constituted a mild nonexertional limitation to his functional capabilities based on the claimant's age, his work records, a psychologist's opinion directly on the issue, and the claimant's own testimony that he never had mental disturbances while at work. In this case, as already discussed, the ALJ did not indicate how severe he believed Claimant's nonexertional impairment to be, and although the Commissioner argues that substantial evidence supports the ALJ's determination, there is no discussion of the record to support a finding that Claimant is capable of performing a full range of unskilled, light work. Also, while it may not be a material distinction, the court notes that *Smalls* and *Smith v. Schweiker*, 719 F.2d 723 (4th Cir. 1984), which was also cited to by the Commissioner in his objections, dealt with psychological impairments, as compared to the nonexertional impairment in this case, which is the result of pain generated by an ongoing severe physical impairment.

making his disability determination. The magistrate judge disagreed and remanded the case so the ALJ could obtain the opinion of a vocational expert as to whether significant number of jobs existed in the national economy which the claimant could perform, given his mild to moderate concentration deficits from pain. In doing so, the court adopted the following rational from a district court in the Northern District of Texas:

> The ALJ further found this nonexertional impairment limited plaintiff to unskilled jobs. In making this determination, the ALJ, in effect, became a vocational expert. Whether plaintiff's moderate impairment in the area of concentration, persistence and pace limited plaintiff to one and two step jobs and whether such eroded the occupational base and to what degree it was eroded was a determination for a vocational expert. While the ALJ may be correct that jobs calling for simple and/or one to two step instructions may be unskilled sedentary jobs, such jobs also require an individual to perform repetitive tasks over an eight-hour work day. Plaintiff's nonexertional impairment of moderate limitation in the area of concentration, persistence and pace could directly affect plaintiff's ability to remain attentive and concentrate. This could directly affect plaintiff's ability to perform simple sedentary work, such as assembly line work, unskilled in nature, which the ALJ found plaintiff capable of performing. It may be that a vocational expert can identify unskilled sedentary jobs which would not be affected by plaintiff's nonexertional limitations. It may also be that a vocational expert would find limitations in the area of concentration, persistence and pace, would affect such jobs and further erode the number of unskilled sedentary jobs available. Reversal and remand is required so a vocational expert can be called and can address the issue.

*Bonds*, 2008 U.S. Dist. LEXIS 61932, at *11 (quoting *Chapa v. Astrue*, 2008 U.S. Dist. LEXIS 109756, 2008 WL 952947 (N.D. Tex. Mar. 21, 2008)).

Without an explanation as to its severity and a discussion of the evidence in the record to support such a determination, the court believes Claimant's nonexertional limitation could directly affect his ability to perform certain jobs in the unskilled, light work occupational base. It may be that a vocational expert will find that a limitation in the area of concentration would affect unskilled, light jobs and further erode the number of such available jobs. Of course, it may be that a vocational expert can identify a significant number of unskilled, light jobs, which would not be affected by

Claimant's nonexertional limitations. Either way, the court adopts the recommendation of the Magistrate Judge and remands this case in order for the ALJ to obtain the testimony of a vocational expert as to whether or not Claimant can perform a significant number of jobs in the national economy based on the severity of his exertional and nonexertional impairments. *See Cain v. Astrue*, No. 08-cv-2632, 2009 U .S. Dist. LEXIS 101964 (D.S.C. October 13, 2009) (following *Bonds* and finding the ALJ erred by solely relying on the grids, rather than obtaining vocational expert testimony, to find the claimant not disabled after determining that the claimant suffered from severe nonexertional impairments, including mild to moderate limitations in social functioning and concentration, persistence, and pace); SSR 83-14 ("[T]he rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.").

Remanding this matter may additionally assist in reaching a proper resolution of this case, in so much as Claimant represents that the Commissioner has since found him disabled again pursuant to a second application for disability. To review the sequence of events in this case, the ALJ concluded on June 26, 2008, that Claimant was disabled between September 23, 2003 and July 5, 2006, but no longer disabled as of July 6, 2006. Then, pursuant to a second application alleging disability, the Commissioner apparently has determined that Claimant became disabled again as of June 27, 2008, one day after the ALJ issued his decision in this matter. Because of the unique scenario presented in this case—in that the Commissioner found Claimant disabled, then not disabled, then disabled again, all within a relatively short period of time—the court does not address Claimant's objections to the R&R involving the ALJ's determination of medical improvement. On

remand, the Claimant may present to the ALJ any new, material evidence which may have aided him in first deciding whether Claimant achieved medical improvement as of July 6, 2006.

## CONCLUSION

It is, therefore, **ORDERED**, for the foregoing reasons, that the Commissioner's denial of benefits is **REVERSED**, and the matter is **REMANDED** for reconsideration in accordance with this Order.[4] 42 U.S.C. §§ 405(g), 1383(c)(3).

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**July 14, 2010**
**Charleston, SC**

[4] "Should this remand result in the award of benefits, Claimant's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until 30 days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. ***This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.***" *Stutts v. Astrue*, No. 06-G-1476-NW, 2007 WL 1696878, at *5 (N.D. Ala. June 13, 2007).